IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LAWRENCE ADAMCZYK, M24512,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 3:22-cv-00863-SMY |
| | ) |
| **IDOC,**[1] | ) |
| *Illinois State Agency*, | ) |
| **ROB JEFFREYS,** | ) |
| *IDOC Director*, | ) |
| **RICH MORGENTHLER,** | ) |
| *BMRCC Warden*, | ) |
| **SARAH BROWN-FOILES,** | ) |
| *IDOC/SOP Policies Coordinator*, | ) |
| **HEATHER DeLAHMUTT,** | ) |
| *SDP BMRCC Administrator* | ) |
| **JESSICA STOVER**, | ) |
| *Treatment Staff,* | ) |
| **ROBERT MOONEY,** | ) |
| *Treatment Staff*, | ) |
| **HEATHER YOUNG,** | ) |
| *VSOP/SDP Treatment Provider*, | ) |
| **and WEXFORD**, | ) |
| *SOP Evaluator Administrator*, | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is now before the Court for preliminary review of the Second Amended Complaint filed by Plaintiff Lawrence Adamczyk. (Doc. 35). Plaintiff is civilly committed at Big Muddy River Correctional Center under the Illinois Sexually Dangerous Persons Act, 725 ILCS 205 *et seq*. He maintains that he has been treated like a prisoner, even though he was not convicted of a crime and alleges violations of his rights stemming from his wrongful incarceration since

---

[1] "IDOC" is an abbreviation for the Illinois Department of Corrections.

March 13, 2016.  He seeks declaratory, monetary, and permanent injunctive relief.  *Id*.  Plaintiff also filed a Motion for Preliminary Injunction on July 18, 2023, which will be addressed herein.  (Doc. 40).

This case is now before the Court for review of the Second Amended Complaint under 28 U.S.C. § 1915A.[2]  Any portion that is frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.  28 U.S.C. § 1915A(b).

## Second Amended Complaint

Plaintiff makes the following allegations in the Second Amended Complaint (Doc. 35): Plaintiff is a civilly committed person who has been housed at Big Muddy River Correctional Center (BMRCC) pursuant to the Illinois Sexually Dangerous Persons Act ("the Act") since March 31, 2016.  All charges against him were dismissed, and he faces no outstanding criminal charges.  The Act authorizes civil detention of sexually dangerous persons (SDPs) for non-punitive purposes and calls for restoration of their liberty upon successful completion of treatment.

Persons in Illinois who are designated as SDPs are made Wards of the State under the Act.  They are initially committed to BMRCC.  There are approximately 170 persons currently classified as SDPs, and 146 of these individuals are now housed at BMRCC.  The prison is designed to house 980 persons and currently holds almost 1,300.

Although SDPs are typically placed in separate housing from convicted prisoners, their conditions of confinement mirror prisoners' living conditions.  Plaintiff is forced to live in the same "punitive" cells, wear the same prison clothing, wear the same hat, and display the same identification as prisoners.  When he asked to order some of these items for a cheaper price from an outside vendor, Plaintiff's request was denied.  He was instructed to use the prison commissary

---

[2] Persons who are civilly committed under the Act are subject to the Prison Litigation Reform Act, 28 U.S.C. § 1915 *et seq*.  *Kalinowski v. Bond*, 358 F.3d 978, 978-79 (7th Cir. 2004).

to purchase the same items at the same price as convicted prisoners.

Wards are denied work release and higher paying jobs that convicted prisoners are allowed. Plaintiff has been subjected to limitations on his phone, mail, and internet privileges even though he was never convicted of a crime, let alone one stemming from the use of these electronic devices. Plaintiff's personal funds are held in a non-interest bearing trust fund account.

The facility has failed to hire, train, and retain mental health professionals who can properly treat the wards. And Wexford evaluators lack skills and knowledge necessary to properly evaluate the wards. As a result, SDPs are often worse off after treatment and evaluation and consequently unable to regain freedom.

## Discussion

Plaintiff asserts the following claims in the *pro se* Second Amended Complaint:

Count 1: Peonage claim against all defendants, except the IDOC, under 42 U.S.C. § 1994 and/or 42 U.S.C. § 1983. *Id*. at ¶¶ 53-56.

Count 2: Claim against all defendants under 18 U.S.C. §§ 1581, 1595 and 22 U.S.C. § 7101-7200 (TVPA). *Id*. at ¶¶ 57-60.

Count 3: Eighth and/or Fourteenth Amendment claim against all defendants for failing to provide Plaintiff with necessary and adequate treatment for his mental illness/disorder as an SDP and thereby subjecting him to an unreasonable risk of prolonged or indefinite detention. *Id*. at ¶¶ 61-67.

Count 4: Claim against all defendants for interfering with Plaintiff's right to accumulate property by denying him fair educational opportunities, employment opportunities, wages, commissary prices, or access to an interest bearing account in violation of the First, Fifth, Fourteenth, and Sixteenth Amendments. *Id*. at ¶¶ 68-77.

| | |
|---|---|
| Count 5: | Claim against Warden, IDOC Director, and IDOC for violating the Fair Minimum Wage Act, 29 U.S.C. § 206, *et seq*. *Id*. at ¶¶ 78-81A. |
| Count 6: | Claim against Warden, IDOC Director, and IDOC for adopting housing and employment practices that violate the ADA or Rehab Act. *Id*. at ¶¶ 82-88. |
| Count 7: | First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and/or Fourteenth Amendment claim against Defendants, IDOC Director, Warden, Wexford's SOP Administrator, IDOC's Sex Offender Program Administrator, and BMRCC SOP Administrator for failing to train or supervise employees as it pertains to the liberty or other rights of SDPs. *Id*. at ¶¶ 89-94. |
| Count 8: | Racketeering claim against all defendants, except IDOC, for violations of 18 U.S.C. §§ 1961(1)(A) and (B), 1964 based on their participation in tortious conduct that violates 18 U.S.C. §§ 1581, 1589, 1590, 1592, 1593, and, especially, 1594, as well as 18 U.S.C. §§ 1341, 1343, 1513, 1951, 1961, 1964, 725 ILCS 205/8, 720 ILCS 5/1756, 720 ILCS 5/8-2.1, and 720 ILCS 5/12-6. *Id*. at ¶¶ 95-101. |
| Count 9: | First Amendment claim that the Illinois Sexually Dangerous Persons Act (SDPA), 725 ILL. COMP. STAT. 205/1.01, *et seq*., is facially unconstitutional for the reasons set forth at Doc. 35, ¶¶ 1, 33-47, 109-27. |

(Doc. 35).

## Counts 1, 2, 4, 5, 7, and 8

Counts 1, 2, 4, 5, 7, and 8 fail to state a claim upon which relief may be granted. Each of these claims is based upon a long list of alleged federal constitutional or statutory violations that Plaintiff attempts to pass off as a single claim that is unsupported by allegations of misconduct by the defendants. Counts 1, 2, and 8 also hinge on violations of federal criminal statutes, which, as a private citizen, Plaintiff cannot pursue against the defendants in this civil suit. As such, these claims do not survive review under the most liberal pleading standards, and will be dismissed without prejudice.

## Count 3

Plaintiff was committed to the custody of the Illinois Department of Corrections under the Sexually Dangerous Persons Act, 725 Ill. Comp. Stat. 205/0.01, *et seq*. Persons who are civilly

4

committed under the Act are considered pretrial detainees. *See Allison v. Snyder*, 332 F.3d 1076, 1080 (7th Cir. 2003). Claims raised by detainees under § 1983 implicate the Fourteenth Amendment (not the Eighth Amendment).

The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, and property, without due process of law." "Due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001). *See also Allison*, 332 F.3d at 1079. The duration of Plaintiff's commitment depends on this successful completion of treatment. As the Seventh Circuit has explained, "[p]ersons charged with sex offenses in Illinois may be diverted before trial to civil confinement, if a mental illness of at least one year's duration led to the criminal conduct. Those who complete treatment successfully are released and the criminal charges dismissed." *Allison*, 332 F.3d at 1078. In other words, there is no prospect of release without treatment.

As the Seventh Circuit recently explained in *Howe v. Hughes*, -- F.4th --, 2023 WL 4701985, at *2 (7th Cir. July 24, 2023), civil confinement undoubtedly "'constitutes a significant deprivation of liberty' and 'can engender adverse social consequences,' thereby 'requir[ing] due process protection.' . . . The Fourteenth Amendment requires states to balance their interests—caring for citizens suffering from mental illness and protecting the community—against the liberty interests of those who it seeks to civilly detain. . . . This balance can only be struck where the state's interest in civil commitment is non-punitive." *Id*. (citations omitted). Here, Plaintiff alleges that he has been denied adequate treatment as an SDP and treated like a prisoner, or worse, during his detention. These allegations are sufficient to allow Count 3 to proceed against the individual defendants.

**Count 6**

In Count 6, Plaintiff articulates a viable claim under Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Rehab Act). The ADA, 42 U.S.C. § 12101 *et seq.*, provides that "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehab Act, 29 U.S.C. §§ 794-94e, prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. Discrimination under both statutes includes the failure to accommodate a disability. The analysis is the same under both statutes, except that the Rehab Act includes as an additional element the receipt of federal funds, which all states accept for their prisons. *Jaros v. Illinois Department of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). Plaintiff alleges that he has been subjected to discrimination because of his mental illness by being deprived of access to treatment, programs, and/or housing at BMRCC. Accordingly, the ADA/Rehab Act claims shall proceed.

The proper defendant for these claims is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Plaintiff named IDOC as a defendant and shall be allowed to proceed with Count 6 against that agency. This claim will be dismissed without prejudice against all other defendants.

**Count 9**

Plaintiff raises a constitutional challenge to the Illinois Sexually Dangerous Persons Act in Paragraphs 33-47 and 109-27 of the Second Amended Complaint. (Doc. 35). Although the Illinois Sexually Dangerous Persons Act, 725 Ill. Comp. Stat. 205/1.01, *et seq.*, is described and

sustained against one constitutional challenge in *Allen v. Illinois*, 478 U.S. 364 (1986), this claim is not subject to dismissal at this time under 28 U.S.C. § 1915A. As such, the Court will allow Count 9 to proceed against Rob Jeffreys (IDOC Director), Rich Morgenthler (BMRCC Warden), and Heather DeLahmutt (SDP Program Administrator), in their official capacities. This claim will be dismissed without prejudice against all other defendants.

### Motions for Preliminary Injunction

A plaintiff seeking a preliminary injunction must demonstrate the following: (1) he will suffer irreparable harm if he does not obtain the requested relief; (2) traditional legal remedies are inadequate; and (3) he has some likelihood of prevailing on the merits of his claim. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (citation omitted). If Plaintiff makes this showing, the court must balance the harm to Plaintiff caused by denying the preliminary injunction with the harm to Defendants caused by granting relief. *Id.*. The court takes a "sliding scale" approach when balancing these harms; the more likely the plaintiff is to win on the merits, the less the balance of harm needs to weigh in his favor. *Id.* (citation omitted). When a plaintiff seeks a "mandatory preliminary injunction," as here—requiring affirmative acts by the defendants—such requests are "ordinarily cautiously viewed and sparingly issued." *Id.* (citation omitted).

Plaintiff's Motion for Preliminary Injunction filed July 18, 2023 (Doc. 40) and related motions filed July 25, 2023 (Doc. 42), August 8, 2023 (Doc. 43), and August 15, 2023 (Docs. 44 and 45) are now before the Court. The initial motion spans 42 pages and consists of Plaintiff's renewed challenge to the constitutionality of the Act, numerous requests for immediate and affirmative changes to his living conditions, and a request for release from detention. (Doc. 40). The subsequent motions inquire into the status of the first motion. (Docs. 42-45). These requests not only pertain to certain claims that do not survive screening, but also far exceed the scope of

his surviving claims and interim relief he can obtain.

For the foregoing reasons, Plaintiff's sweeping requests for mandatory preliminary injunctive relief in Documents 40, 42, 43, 44, and 45 are **DENIED** without prejudice at this time. Plaintiff may renew his request for interim injunctive relief, if the request stems from claims that survive screening. To do so, he must file a separate motion that focuses on the exact relief he requires in order to avoid irreparable harm during the pending action.

## Disposition

The Second Amended Complaint (Doc. 35) survives screening pursuant to 28 U.S.C. § 1915A, as follows:

- **COUNT 3** will receive further review against **ALL INDIVIDUAL DEFENDANTS.**

- **COUNT 6** will receive further review against the **ILLINOIS DEPARTMENT OF CORRECTIONS**.

- **COUNT 9** will receive further review against **ROB JEFFREYS, RICH MORGENTHLER,** and **HEATHER DeLAHMUTT**, in their official capacities.

**ALL OTHER CLAIMS** against the defendants are **DISMISSED without prejudice**.

The Clerk shall prepare for **ALL DEFENDANTS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 35), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer

shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED: August 15, 2023            *s/ Staci M. Yandle*
                                  **STACI M. YANDLE**
                                  **United States District Judge**

**Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Second Amended Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.