IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAWRENCE ADAMCZYK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-CV-863-MAB |
| | ) |
| IDOC, RICHARD MORGENTHALER, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| JESSICA STOVER, | ) |
| HEATHER YOUNG, | ) |
| HEATHER DELASHMUTT, | ) |
| ROBERT MOONEY, | ) |
| SARAH BROWN-FOILES, and | ) |
| LATOYA HUGHES, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment filed by all Defendants (Docs. 133, 146; *see also* Doc. 134), and Plaintiff's "Motion to Amend or Reconsider" (Doc. 161) and Motion for Leave to File Amended Complaint (Doc. 174).

### BACKGROUND

Plaintiff Lawrence Adamczyk is civilly committed at Big Muddy River Correctional Center pursuant to the Illinois Sexually Dangerous Person Act ("SDPA"), 725 ILL. COMP. STAT. 205, *et seq*. He filed this civil rights case in April 2022 asserting various constitutional and statutory claims (Doc. 1). The original complaint and the first amended complaint were both dismissed without prejudice for violating Federal Rule of

Civil Procedure 8 and other deficiencies (Doc. 23; Doc. 34). Plaintiff's second amended complaint, filed on March 7, 2023, (Doc. 35), survived screening (Doc. 46).

The gist of the second amended complaint is that, as an SDP, Plaintiff is improperly housed in a penal facility and denied the care and treatment required by Illinois statute and necessary for his release.[1] The Defendants are the IDOC; Latoya Hughes, the Director of the IDOC;[2] Rich Morgenthaler, the warden at Big Muddy; Heather Delashmutt, identified by Plaintiff as the SDP Program Administrator; Jessica Stover and Robert Mooney, identified by Plaintiff as SDP treatment providers at Big Muddy; Heather Young, identified by Plaintiff as a "Voluntary Sex Offender Program (VSOP)—SDP's Treatment Provider"; Sarah Brown-Foiles, identified by Plaintiff as the "IDOC's Policies 'Program Coordinator' of SDP's and VSOP's Program" at Big Muddy; and Wexford Health Sources, Inc., identified by Plaintiff as the "Sex Offender Evaluator Administrator [that] oversees] the Evaluator Providers for SDP's"(Doc. 35, pp. 1–2).

Plaintiff alleges that he and the dozens of other SDPs that are housed at Big Muddy are treated the same as convicted prisoners (Doc. 35, p. 4). He lives in "a punitive cell" and wears the same clothing and displays the same identification as convicted prisoners (*Id.*). He is subjected to authoritarian, coercive, and degrading rules and policies (*Id.* at

---

[1] *See* 725 ILL. COMP. STAT. 205/8 ("If [an individual] is found to be a sexually dangerous person then the court shall appoint the Director of Corrections guardian of [that individual] . . . . The Director of Corrections as guardian shall provide care and treatment for the person committed to him designed to effect recovery.").

[2] Rob Jeffreys, the former Director of the IDOC, was the individual initially named as a Defendant. After he left the IDOC, Latoya Hughes was named acting Director of the IDOC and was automatically substituted in place of Jeffreys pursuant to Federal Rule of Civil Procedure 25(d).

pp. 5, 6–7). For example, SDPs are denied work release and higher paying jobs that convicted prisoners are allowed (*Id.* at p. 5). Plaintiff cannot purchase items, like food, clothing, or shoes, from outside vendors and instead has to use the commissary, just like the convicted prisoners (*Id.* at p. 5). He is subjected to restrictions on clothing and his phone, mail, and internet privileges (*Id.* at pp. 5–6). And his personal funds are held in a non-interest-bearing trust fund account (*Id.* at p. 6)

In terms of treatment, Plaintiff alleges that SDPs are entitled to "sound menatal [sic] emotional medical care" (*Id.* at p. 7). But according to Plaintiff, the facility has failed to hire, train, and retain "high quality staff for mental emotional medical care" (*Id.* at p. 8). He states that all Defendants, especially Mental Health Professionals, should know the law and best practices regarding the care and treatment of SDPs (*Id.* at pp. 8, 9). But he claims that "Wexford evaluators" and "treatment staff" lack the necessary skills and knowledge (*Id.* at p. 10). He alleges that SDPs are often worse off after treatment and evaluation and consequently unable to regain freedom (*Id.* at p. 8).

Plaintiff's confinement as an SDP is supposed to rehabilitate him and his liberty is dependent on receiving proper care and treatment (*e.g.,* Doc. 35, pp. 2, 4, 7). *See* 725 ILL. COMP. STAT. 205/8, 205-9(e), 205/10. But Plaintiff claims that he is subjected to a "coercive, abusive, negelectful [sic] environment" that is "designed to punish," "degrade, humiliate, and cause mental and physical pain" (*Id.* pp. 8, 15). He claims that his care and treatment as an SDP does not promote recovery but rather inhibits it (*Id.* at p. 4).

Plaintiff was permitted to proceed on the following claims, as interpreted and outlined by the Court:

**Count 3:** Fourteenth Amendment claim against all individual Defendants for failing to provide Plaintiff with necessary and adequate mental health treatment and subjecting him to conditions of confinement that are punitive in nature (*see* Doc. 46, pp. 3, 4–5).

**Count 6:** Claims under the Americans with Disabilities Act and the Rehabilitation Act against the IDOC for discriminating against Plaintiff because of his mental illness by depriving him of access to treatment, programs, and/or housing at Big Muddy (Doc. 46, pp. 4, 6).

**Count 9:** First Amendment claim against Defendants Latoya Hughes, Richard Morgenthaler, and Heather Delashmutt in their official capacities that the Illinois Sexually Dangerous Persons Act (SDPA), 725 ILL. COMP. STAT. 205/1.01, *et seq.*, is facially unconstitutional (Doc. 46, pp. 4, 6–7).

### DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON THE ISSUE OF EXHAUSTION

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g.*, *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has held that disputed factual questions can and should be resolved by the judge (rather than a jury) as a preliminary matter in an evidentiary hearing known as a "*Pavey* hearing." *Smallwood v. Williams*, 59 F.4th 306,

315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). But when a prisoner does not raise sufficient factual allegations to demonstrate a genuine dispute of material fact, then no evidentiary hearing is necessary. *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood*, 59 F.4th at 318). After reviewing both sides' briefs, the Court has determined that there are no genuine issues of material fact, and a hearing is not necessary.

## Discussion

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

As an individual in IDOC custody, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). There is no dispute that the grievances at issue all went through every step of the grievance process (*see* Docs. 134, 146). The primary issue here is whether the content of the grievances was sufficient to cover the claims in

this case.

## A. COUNT 3—14TH AMENDMENT VIOLATION

Based on the nature of Plaintiff's allegations, the Court sees the 14th Amendment claim as being two-pronged. The first prong is that he has not been provided with adequate mental health treatment as an SDP in violation of his 14th Amendment rights. The second prong is that the conditions of his confinement are punitive in nature, which violates his 14th Amendment rights.

### 1. Mental Health Treatment

With regard to the first prong—the mental health treatment aspect of Plaintiff's confinement—Defendants contend that there is only one grievance that can be reasonably understood as being related to his claim that they failed to provide him with necessary and adequate treatment: grievance #76-5-21, dated May 18, 2021 (Doc. 134, p. 4; Doc. 146, p. 12). Plaintiff agrees that grievance #76-5-21 is relevant and claims that grievance #6-6-21, dated May 30, 2021, is also relevant (Doc. 152; Doc. 153).

The Court will begin with grievance #6-6-21 (*e.g.*, Doc. 134-1, pp. 40–44). In this grievance, Plaintiff states that he has a past back injury that causes a lot of pain when he sleeps because he often sleeps on his stomach, which the bed, mattress, and pillow do not accommodate (*Id.* at pp. 42–43). He asks to modify his bed and for a better mattress and pillow designed "for a belly sleeper" (*Id.*).

This grievance, on its face, appears wholly unrelated to Plaintiff's allegations about improper mental health treatment. Plaintiff tries to force the connection by arguing that

everyone knows "a person['s] mental health is tied to sleep" (Doc. 152, p. 4). The Court, however, finds that purported connection is far too attenuated to pass muster. Any reasonable person reading this grievance would think that it was only about Plaintiff trying to get his bed, pillow, and mattress replaced because they cause him back pain. No reasonable person would possibly read this grievance so broadly as to think that it amounts to a general complaint about the quality of mental health providers and the care they are providing to SDPs at Big Muddy. Consequently, grievance #6-6-21 cannot serve to exhaust the mental health treatment prong of Count 3.

Moving on to grievance #76-5-21, Plaintiff complains about where and how SDPs are housed (Doc. 134-2, pp. 27–28). He begins by grieving that SDPs are not confined in a facility set aside just for them and instead are housed at Big Muddy (*Id.*) He then goes on to list 13 specific issues with inadequate clothing (1, 8), limited out of cell-time (2, 10), phone and visitor privileges (3), job assignments and pay (4), inability to purchase items from outside the prison (5 and 13), treatment staff (6), rules "used to harass" (7), lack of air conditioning and the location and size of toilets (9), being sent to segregation (11), and trust fund accounts (12) (*Id.*).

Defendants argue that the substance of this grievance does not relate to Plaintiff's claim that he was not provided with necessary and adequate mental health treatment (Doc. 134, p. 10; Doc. 46, p. 13). The Court, however, thinks there is one particular portion of the grievance—item six—that appears to be related to mental health treatment. Otherwise, the remaining portions simply have nothing to do with the mental health treatment provided to SDPs, and the Court is once again unpersuaded by Plaintiff's

attempt to re-frame some of these issues as mental health issues (*see* Doc. 152, p. 13).

Item six in the grievance reads as follows: "Forced to have treatment staff medical ones for mental health to not follow their own guidelines. Not being writed[3] to MHP who would do a complete job and know the law and court cases." (Doc. 134-2, p. 28). The grievance officer who responded to the grievance appears to have interpreted item six to be a complaint that there should be "better treatment staff" for SDPs (Doc. 134-2, p. 25). The Court would agree that it seems like Plaintiff was attempting to lodge some kind of complaint about his mental health treatment. But what is written in the grievance is simply too incoherent for the Court to know the exact nature of Plaintiff's complaint. That, in turn, leads to the inescapable conclusion that this portion of the grievance was insufficient to put prison officials on notice of the purported problems with mental health treatment that Plaintiff talked about in the second amended complaint. Accordingly, this grievance cannot serve to exhaust Plaintiff's claim about inadequate mental health treatment for SDPs.

### 2. Punitive Confinement

As for the second prong of Plaintiff's 14th Amendment claim—the punitive nature of his confinement—Defendants made no argument that this aspect of Plaintiff's claim was unexhausted (*see* Docs. 134, 146). Perhaps that is because Defendants did not realize

---

[3] The Court cannot tell for certain what this word is. It looks like "writed" or "writen," but neither of those words really make any sense in the context of the sentence. However, the Court is unable to come up with any alternatives as to what the word might be. In his response briefs, Plaintiff discussed most of the 13 issues listed in his grievance (Doc. 152, pp. 10–13; Doc. 153, pp. 13–14), but, unfortunately, he did not explain the meaning of item 6 (*see id.*).

that the Court understood Plaintiff's claim to be two-pronged. Or perhaps it was because Defendants thought this prong had been exhausted. In the event that it is the former, the Court does not believe it is necessary to allow Defendants to brief whether this prong of Plaintiff's 14th Amendment claim was exhausted because it is clear that grievance #76-5-21 is sufficient to cover this aspect of the claim given that the complaints in the grievance match up almost exactly with the allegations in the second amended complaint.

The Court also does not view Plaintiff's failure to name or describe the prison officials responsible for the punitive conditions that SDPs face as a fatal deficiency. *See* 20 ILL. ADMIN. CODE § 504.810(c) (requiring that grievances "contain factual details regarding each aspect of the offender's complaint, including . . . the name of each person who is the subject of or who is otherwise involved in the complaint," or, if their name is unknown, "as much descriptive information about the individual as possible."). The conditions under which SDPs are confined and the rules and policies that govern their confinement are obviously the product of an administrative decision. "[I]t belies reason to suggest that prison administrators . . . were unaware of who was responsible for that decision." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (prison administrators at Lawrence were surely aware of who was responsible for making administrative decision to cancel religious services). On the other hand, it would be unsurprising if Plaintiff was unaware of which official(s) was/were responsible for that decision. *See Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) (explaining that some decisions are based on "a mystifying web of rules and procedures, and behind those an army of administrators" and "it would be unreasonable to expect that, for every set of facts, an inmate will be able

to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision"). Under the circumstances here, Plaintiff's failure to name any of the Defendants in the grievance "was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Maddox*, 655 F.3d at 722.

Additionally, to the extent Defendants argue that this grievance was unexhausted because it relates to administrative policies and decisions that are outside the purview of the grievance office, (Doc. 134, pp. 11–12), the Court does not agree. The grievance office's inability to consider the issues in Plaintiff's grievance or offer any relief means the grievance process was not available in the first place, not that Plaintiff failed to fully exhaust his administrative remedies. *See Wallace v. Baldwin*, 55 F.4th 535, 542 (7th Cir. 2022) ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end," such as when the administrative office to which inmates are directed to submit their grievances "disclaims the capacity to consider those petitions.") (citation omitted). *See also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("The Supreme Court has stated that so long as the administrative authority has the ability to take *some* action in response to the complaint (even if not the requested action), an administrative remedy is still 'available' under the PLRA.") (citing *Booth v. Churner,* 532 U.S. 731, 741 (2001)); *Larkin v. Galloway,* 266 F.3d 718, 723 (7th Cir. 2001) (inmate must exhaust prison remedies if the administrative body (1) was empowered to consider the complaint and (2) could take some action in response to it). Plaintiff was not required to exhaust to exhaust a grievance process that could offer

him no relief for the actions he was complaining about). *Wallace*, 55 F.4th at 542.

Accordingly, Plaintiff's 14th Amendment claim as to the punitive nature of his confinement will move forward because Defendants did not argue that he failed to exhaust his administrative remedies as to this aspect of his claim, and any argument to that effect would likely be unsuccessful. But, the question then becomes: who are the Defendants against which this claim will proceed? Plaintiff did not specifically allege in the second amended complaint which Defendant(s) were responsible for the conditions and policies at issue (*see* Doc. 35). Although Plaintiff was permitted to proceed on Count 3 as to all of the individual Defendants, (Doc. 46), the Court knows that the facts underlying this portion of the claim simply cannot be attributed to *all* of the individual Defendants.

For example, Wexford is the company that the IDOC previously contracted with to provide medical and mental health services to individuals in IDOC custody. In his response brief, Plaintiff suggests Wexford is also responsible for, or has the ability to influence, SDPs' conditions of confinement (*e.g.,* Doc. 152, p. 12 ("Wexford could use their fund money to fix or insist" that SDPs should have air conditioned cells and more sanitary bathroom accommodations); *Id* at p. 13 (arguing that Wexford could do something to make sure SDPs get more yard and gym time)). Plaintiff's arguments appear to reflect a fundamental misunderstanding as to Wexford's role in IDOC facilities. Based on the Court's experience in handling hundreds of lawsuits against Wexford, there is no reason to believe that Wexford has any responsibility for or say in the conditions and policies that Plaintiff has complained about regarding the type of cell he is housed

in, the amount of out-of-cell time he gets, the clothing he is allowed, making purchases, phone/mail/internet privileges, trust fund accounts, etc. Plaintiff did not allege anything to the contrary in his second amended complaint (Doc. 35). To the extent he is now claiming as much in his response brief, (see Doc. 152), the Court is unpersuaded. Wexford will therefore be dismissed as a Defendant to Count 3.

The Court likewise has no reason to believe the Defendants whom Plaintiff identified as mental health treatment providers for SDPs—Jessica Stover, Robert Mooney, and Heather Young—played any role in the punitive conditions and policies that Plaintiff complained about. That is particularly true for Mooney, who was employed by Wexford, not the IDOC. Accordingly, Stover, Mooney, and Young will be dismissed as Defendants to Count 3.

That leaves Latoya Hughes, the Director of the IDOC; Rich Morgenthaler, the warden at Big Muddy; Heather Delashmutt, the SDP Program Administrator; and Sarah Brown-Foiles, the "IDOC's Policies 'Program Coordinator' of SDP's and VSOP's Program." Hughes, as the Director of the IDOC, undoubtedly has the power to change the living conditions of SDPs at Big Muddy. It also seems likely that Mogenthaler holds some degree of power as the Warden at Big Muddy. It is also possible that Delashmutt and Brown-Foiles have the ability to change or influence the SDPs' conditions of confinement given their respective positions as "Program Administrator" and "Program Coordinator." Accordingly, Count 3 will proceed against this four individuals, and discovery on the merits of Plaintiff's claim can be used to investigate a definitive answer as to who could potentially bear responsibility for the SDPs' conditions of confinement

at Big Muddy.

### B. COUNT 6 RE: VIOLATION OF THE ADA AND REHAB ACT

In this count, Plaintiff alleges that the IDOC violated Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehab Act") by discriminating against him because of his mental illness by depriving him of access to treatment, programs, and/or housing at Big Muddy (Doc. 46, p. 6). The IDOC argues that Plaintiff did not file grievances regarding any acts on the part of IDOC that would indicate IDOC was acting in a discriminatory manner towards Plaintiff by depriving him of access to treatment, or jobs, or programs, or housing (Doc. 146, pp. 13–14; *see also id.* at pp. 5–9 (describing all of the grievances Plaintiff submitted)). The Court agrees. Neither of the grievances that Plaintiff claims are relevant: #6-6-21 or #76-5-21 (*see* Doc. 153), explicitly or implicitly mention discrimination or that Plaintiff thought his rights under the ADA or Rehab Act were being violated.

Accordingly, Count 6 is dismissed without prejudice for failure to exhaust. Because this was the only Count on which the IDOC was named as a Defendant, (*see* Doc. 46), the IDOC is likewise dismissed without prejudice from this matter.

### C. COUNT 9 RE: CONSTITUTIONALITY OF THE SEXUALLY DANGEROUS PERSONS ACT

Defendants Hughes, Morganthaler, and Delashmutt argue that Plaintiff's grievances failed to present facts sufficient to put them on notice that Plaintiff was seeking to challenge the facial constitutionality of the SDPA (Doc. 146, p. 14). Defendants did not, however, establish that the grievance process is actually available for this claim,

or in other words, that prison officials have the power to take any action in response to a claim that a statute is facially unconstitutional (*see id.*). The Court is skeptical that they could. Accordingly, Defendants' motion for summary judgment is denied as to Count 9.

### PLAINTIFF'S MOTIONS TO AMEND THE COMPLAINT

Plaintiff's first motion, Doc. 161, is titled "Motion to Amend or Reconsider." In the motion, Plaintiff states that he wants to allege that the SDPA is unconstitutional on its face *and* as applied, and he wants his allegations to "unambiguously say . . . the SDPA is an ex post facto law" (Doc. 161, p. 1). Given the stated purpose of the motion, the Court concludes that Plaintiff is trying to amend the nature of his allegations, (*see* Doc. 35, Doc. 46), which he cannot do through a motion to reconsider. He can only do that through an amended complaint. To the extent the motion can be construed as a motion for leave to amend, it is denied because Plaintiff did not submit a proposed amended complaint with his motion, as required by Local Rule 15.1.

Plaintiff's second motion, unlike the first, does contain a proposed amended complaint (Doc. 174; Doc. 174-1). The Court will therefore evaluate Plaintiff's motion for leave to amend under Rule 15, which instructs that leave to amend should be freely given when justice so requires, FED. R. CIV. P. 15(a)(2), while simultaneously evaluating the proposed amended complaint under 28 U.S.C. § 1915A, which instructs that any portion of the complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

Plaintiff wants to amend Count 9 to add an allegation that the SDPA is "ex post

facto" (Doc. 174-1, p. 46), because it "takes away every defense the accused had . . . ." (Doc. 174). Plaintiff glommed onto language from the Supreme Court's opinion in *Kansas v. Hendricks*, 521 U.S. 346, 371 (1997) ("Because the [Kansas Sexually Violent Predator Act] does not criminalize conduct legal before its enactment, nor *deprive Hendricks of any defense that was available to him at the time of his crimes*, the Act does not violate the *Ex Post Facto* Clause."), without actually providing a coherent explanation as to how the SDPA deprives an individual of any defense that was available to him at the time of his alleged crimes. Such an explanation is critical because Plaintiff's stated *ex post facto* concerns do not otherwise seem to align with the actual meaning of that phrase. *See* BLACK'S LAW DICTIONARY, *Ex Post Facto* (12TH ED. 2024) ("Done or made after the fact; having retroactive force or effect"). *Id.*, *Ex Post Facto Law* ("A statute that criminalizes an action and simultaneously provides for punishment of those who took the action before it had legally become a crime."). *See also Hendricks*, 521 U.S. at 371 (explaining the Kansas Sexually Violent Predator Act did not violate the *Ex Post Facto* Clause because it was not a penal statute and did not have a retroactive effect but rather "permits involuntary confinement based upon a determination that the person *currently* both suffers from a 'mental abnormality' or 'personality disorder' and is likely to pose a future danger to the public."). Accordingly, Plaintiff's motion is denied to the extent that he wants to amend Count 9.

Plaintiff also seeks to amend in yet another attempt to assert claims that his confinement at Big Muddy amounts to involuntary servitude in violation of the 13th Amendment, 42 U.S.C. § 1994, human trafficking laws (*see* Doc. 174-1, pp. 33–39; *see also*

Docs. 23, 34). The new material regarding these claims is long—an additional 25 pages, often repetitive, and much of it reads like a disjointed exposition on the history of America's laws regarding forced labor rather than a civil complaint (*see* Doc. 174-1).

These exact claims, or substantially similar claims, have already been discussed and dismissed for failure to state a claim in this case, (*see* Docs. 23, 34), as well as a subsequent case that Plaintiff filed in an effort to re-represent these claims. *See also Adamczyk v. Hughes, et al.*, SDIL case number 24-cv-1689-DWD, Docs. 16, 24. The Court will not repeat the analysis from the prior Orders but incorporates as if fully set forth herein. Any further explanation is simply a waste of judicial resources. The Court adds only that Plaintiff has once again included almost no factual allegations to support his claims. The facts he did include were sprinkled throughout the 25 pages of new material, requiring the Court to hunt for them. Even when found, they are not helpful as they are stated in a vague and sometimes confusing manner and not attributed to any specific defendant (*see, e.g.*, Doc. 174-1, p. 18 ("Defendant has a system of peonage that voluntary forces person in custody to take job assignments . . . ."), or they are insufficient to state a claim under current precedent. *See Adamczyk v. Hughes, et al.*, SDIL case number 24-cv-1689-DWD, Doc. 24.

Consequently, the Court concludes that Plaintiff should not be allowed to amend his complaint to add these claims because they violate Rule 8's requirement of "a short and plain statement of the claim" and "simple, concise, and direct" allegations and are also insufficiently pled. FED. R. CIV. P. 8(a), (d)(1); 28 U.S.C. 1915A (authorizing dismissal of a complaint that is "frivolous . . . or fails to state a claim upon which relief may be

granted"); *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where there is . . . repeated failure to cure deficiencies . . . or where the amendment would be futile."). If Plaintiff continues to file motions for leave to amend to reallege these claims, the motions will be summarily denied and Plaintiff may be subject to sanctions for frivolous and redundant filings, which he has already been warned about (*see* Doc. 117). Monetary sanctions are unlikely to be effective given Plaintiff's pauper status and repeated claims that he has no money. *E.g., Hoskins v. Dart*, 633 F.3d 541, 544 (7th Cir. 2011). Therefore, sanctions would likely take the form of a filing ban or dismissal of this suit.

## CONCLUSION

Plaintiff's "Motion to Amend or Reconsider" (Doc. 161) and Motion for Leave to File Amended Complaint (Doc. 174) are both **DENIED**.

The motion for summary judgment on the issue of exhaustion filed by Defendants Robert Mooney and Wexford Health Sources, Inc. (Doc. 133) is **GRANTED**. The companion motion filed by Defendants IDOC, Latoya Hughes, Richard Morgenthaler, Heather Delashmutt, Sarah Brown-Foiles, Jessica Stover, and Heather Young (Doc. 146) is **GRANTED in part and DENIED in part.**

The portion of Count 3 that alleges inadequate mental health treatment is **DISMISSED without prejudice** as unexhausted. Count 6 is **DISMISSED without prejudice** as unexhausted. The IDOC, Wexford, Robert Mooney, Jessica Stover, and Heather Young are **DISMISSED without prejudice** as Defendants in this action**.**

This matter shall proceed on the following claims against the following

Defendants:

> **Count 3:** Fourteenth Amendment claim against Defendants Latoya Hughes, Richard Morgenthaler, Heather Delashmutt, and Sarah Brown-Foiles for subjecting Plaintiff to conditions of confinement that are punitive in nature.
>
> **Count 9:** First Amendment claim against Defendants Latoya Hughes, Richard Morgenthaler, and Heather Delashmutt in their official capacities that the Illinois Sexually Dangerous Persons Act, 725 Ill. Comp. Stat. 205/1.01, *et seq.*, is facially unconstitutional.

The stay on discovery on the merits of Plaintiff's claims (see Doc. 119) is **LIFTED**, and the parties may proceed with discovery. A new schedule will be entered by separate order.

IT IS SO ORDERED.

DATED: September 29, 2025

                 **s/ Mark A. Beatty**
                 **MARK A. BEATTY**
                 **United States Magistrate Judge**